1
2
3
4
5

Matthew J. Speredelozzi
Attorney at Law, SBN: 256190
444 West C Street, Ste. 310
San Diego, CA 92101
p. 619.363.1405
f. 619.566.4127
matt@lawofficemjs.com

6
7

Attorney for
FLORENCIO JOSE DOMINGUEZ

8

9          UNITED STATES DISTRICT COURT

10         SOUTHERN DISTRICT OF CALIFORNIA

11

12   FLORENCIO JOSE DOMINGUEZ        )   Case No. 14cv2890 BAS (RBB)
                                     )
13            Petitioner             )
                                     )
14                                   )   SUPPLEMENTAL PETITION FOR
                                     )   RELIEF PURSUANT TO 28 USC §
15   v.                              )   2241; MEMORANDUM OF POINTS
                                     )   AND AUTHORITIES
16   SCOTT KERNAN, Secretary, California )
     Department of Corrections and   )
17   Rehabilitation,                 )
                                     )
18                                   )
              Respondent             )
19   _____ )

20

21   TO: THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF

22   CALIFORNIA AND THE ATTORNEY GENERAL FOR THE STATE OF CALIFORNIA;

23   Please take notice that Petitioner hereby submits for consideration this SUPPLEMENTAL

24   PETITION FOR RELIEF PURSUANT TO 28 U.S.C. § 2241.

25
26
27
28

1

## TABLE OF AUTHORITIES

2

STATUTES

3
Cal. Penal Code § 654 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 11, 22

4
28 U.S.C. § 2241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 12, 13, 14

5
28 U.S.C. § 2254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13, 14

6
U.S. Const., Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 15

7

8
CASE LAW

9
Kellett v. Superior Court (1966) 63 Cal. 2d 822 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11, 22

10
Stow v. Murashige (9th Circ. 2004) 389 F.3d 880 . . . . . . . . . . . . . . . . . . . . . . . . . . .4, 12

11
Ashe v. Swenson (1970) 397 U.S. 436 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10, 15, 16, 17

12
Ex parte Royall, 117 U.S. 241 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

13
Picard v. Connor (1971) 404 U.S. 270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

14
United States ex rel. Scranton v. New York (2d Cir. 1976) 532 F.2d 292  . . . . . . . . . . . . . .13

15
United States ex rel. Ordog v. Yeager (D.N.J. 1969) 299 F.Supp. 321 . . . . . . . . . . . . . 13, 14

16
People v. Shuey (1975) 13 Cal. 3d 835 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

17
Vasquez v. Hillary (1986) 474 U.S. 254 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

18
McCary v. Zavaras (10th Circ. 2010) 398 Fed. Appx. 399 . . . . . . . . . . . . . . . . . . . . . . .14

19
Ward v. Wolff (1980), 499 F. Supp. 1129 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

20
Barrett v. Acevedo (8th Circ. 1999) 169 F.3d 1155 . . . . . . . . . . . . . . . . . . . . . . . . . .15

21
Snell v. Lockhart (8th Circ. 1994) 14 F.3d 1289 . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

22
Yeager v. United States (2009) 557 U.S. 110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

23
United States v. Felix (1992) 503 U.S. 378 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

24
Evanchyk v. Stewart (9th Circ. 2003) 340 F.ed. 933 . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

25
Green v. United States (1957) 355 U.S. 184 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

26
JURY INSTRUCTIONS

27
Calcrim 417 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21

28

## **BACKGROUND**

On October of 2010, Petitioner was brought to trial on a single count of murder with special allegations related to use of a firearm and that the murder was committed for the benefit of, at the direction of, or in association with a criminal street gang.  That trial resulted in a hung jury.  Judge Jeffrey Fraser dismissed the case at a status hearing on November 4, 2010 stating that the prosecution failed to meet its burden of proof at trial. This dismissal is the basis of the instant writ, the primary issue being whether the judge's pronouncement in dismissing the case was the functional equivalent of an acquittal thus precluding a retrial.

Immediately after the dismissal, the San Diego County District Attorney's office (hereinafter "DA") re-filed the case, now charging both murder and conspiracy to commit murder.  Petitioner objected via a demurrer (which was denied), filed a emergency writ (which was denied), and entered a plea of once in jeopardy.  Petitioner stood trial for a second time and was found guilty on both charges on April 28, 2011.  He was later sentenced on June 24, 2011.  Petitioner appealed his conviction on double jeopardy grounds (and other grounds unrelated to the instant supplemental petition).  The Fourth District Court of Appeal for the State of California denied his double jeopardy claim.  The California Supreme Court denied review.

Petitioner filed the instant writ claiming his convictions were in violation of the Fifth Amendment privilege against being twice put in jeopardy for the same offense.  On August 23, 2016 the magistrate judge issued a Report and Recommendation Granting Petition for Writ of Habeas Corpus.  (ECF #9.)  After oral argument, the District Court Judge requested briefing on whether the conspiracy to commit murder charge was barred by double jeopardy, "assuming the Court finds that Petitioner is entitled to habeas relief as to his murder conviction…"  (ECF #15.)

On October 6, 2017, the state court overturned Petitioner's conviction based on a "Brady" violation.  (ECF #16, Exhibit I.)  In the state court proceedings it was discovered that the San Diego Police Crime Lab withheld exculpatory information related to changes in DNA interpretation protocols that were relevant and material in Petitioner's second

1    prosecution.  The state court ordered the DA to release petitioner or retry the case.

2         On November 3, 2017, the DA elected to retry the case, but filed an Amended

3    Information foregoing the prosecution of the murder charge and now charging only the

4    conspiracy to commit murder charge.  This strategic move by the prosecution gave the

5    Respondent a tactical advantage in this federal habeas petition.  Based on the federal filings,

6    it was obvious the federal court was seriously considering finding that an acquittal occurred

7    precluding retrial of the murder charge.  The federal court still had some questions as to

8    whether an acquittal barred the conspiracy charge.  (ECF #15.)  By foregoing the murder

9    prosecution and proceeding only on the conspiracy charge, the DA could avoid a ruling that

10   an acquittal occurred by arguing that conspiracy to commit murder is not the "same offense"

11   and thus not precluded by double jeopardy.  If the court accepted this argument, it would

12   render a ruling on whether an acquittal occurred unnecessary.

13        This is a significant tactical move because under independent state law an acquittal

14   would unquestionably preclude retrial on both conspiracy to commit murder and murder.

15   (See Cal. Penal Code § 654 and Kellett v. Superior Court (1966) 63 Cal. 2d 822.)  This gives

16   the prosecution in this case, both the DA and the Respondent, the ironic circumstance of

17   having benefited from their own Brady violation.

18        After the conviction was overturned in state court and the DA filed an amendment

19   information on only the conspiracy charge, this court dismissed the instant petition as moot.

20   After appeal at the Ninth Circuit, the case was remanded with instructions to treat this

21   petition as a 28 U.S.C. § 2241(a) petition (pretrial habeas), rather than a 28 U.S.C. § 2254

22   petition (post conviction habeas) under the Antiterrorism and Effective Death Penalty Act

23   (aka "AEDPA").  This is significant because it changes the standard of review from the

24   contrary to/unreasonable application of law/unreasonable determination of facts standards to

25   de novo standard.  (See Stow v. Murashige (9th Circ. 2004) 389 F.3d 880, 885-886.)

26        This court now seeks a supplemental petition and briefing stating each ground

27   available pursuant to § 2241 and the facts supporting each ground and the relief requested.

28   (ECF #35.)  Further, the court ordered Petitioner to address several issues including

     "whether (1) he has adequately exhausted his double jeopardy claim under § 2241; and (2)

---

the Double Jeopardy Clause bars his prosecution on a charge of conspiracy to commit murder when, assuming he was acquitted, his previous acquittal applied solely to the charge of murder." Petitioner can also brief other issues he deems appropriate. (Id.)

## PERTINENT FACTS

The first trial (where Petitioner was charged with only murder) and the second trial (where he was convicted of murder and conspiracy to commit murder) were not significantly factually distinguishable. They were basically the same case and the same facts. The only significant difference is that at the second trial the prosecution added a new theory of liability, conspiracy to commit murder. That theory was not based on new facts and all facts the prosecution relied on to bring the new theory were fully known to the prosecution at the first trial.

At first trial the prosecution presented the theory that on September 13, 2008, three men beat the victim Moises Lopez in Mountain View Park while a dozen or so other gang members were present in the park. On the night in question, gang members were assembled at Mountain View Park in Southeast San Diego. They were drinking and smoking marijuana and jumping in new gang members. Both men and women were present at the park.

Three of the men at the park attacked and beat the victim in the open field area of the park next to Franklin Ave. The men then stepped away from the victim and went to the benches next to the alley in the park for a few minutes while the victim stayed lying on the ground. One of the three men then approached the victim and pulled a gun from his waistband and shot the victim multiple times. Everyone ran away when the gunshots rang out.

The prosecution called witness Magdalena Lopez who testified on October 6, 2019. (Exhibit 1 - Oct 6, 2010, RT.) She testified that she lives near the park (Mountain View Park) where the killing of Moises Lopez took place.[1] She was with her daughter, Jessica Lopez. (Exhibit 1 - Oct 6, 2010, RT 13.) She describes what she saw the night the victim was beaten and shot. (Exhibit 1 - Oct 6, 2010, RT 12.) From her house she could see into

---

[1] There is no relation between Magdalena Lopez and Moises Lopez. This needs clarification because Moises Lopez mother is coincidentally also named Magdalena Lopez.

the park and saw some guy (aka the victim Moises Lopez) being beat by others. (Exhibit 1 - Oct 6, 2010, RT 16.) The victim was lying down. (Exhibit 1 - Oct 6, 2010, RT 16.) The person beating him was standing over him hitting and kicking him. (Exhibit 1 - Oct 6, 2010, RT 17.) Two more people came over to the beating and assisted in the beating. (Exhibit 1 - Oct 6, 2010, RT 18.) The beating lasted five to ten minutes. (Exhibit 1 - Oct 6, 2010, RT 19.) The men then pulled the victim by his arms and took him to a new location within the park. (Exhibit 1 - Oct 6, 2010, RT 19.) The men then moved to the trees by the benches in the park and left the victim alone. (Exhibit 1 - Oct 6, 2010, RT 19.) The men stayed by the benches for some time and one of these men went back to where the victim was. That man pulled something out of his waistband, pointed it at the victim, and she could hear gunshots. (Exhibit 1 - Oct 6, 2010, RT 21.) The person who fired the shots was the first person to start beating the victim. (Exhibit 1 - Oct 6, 2010, RT 22.)

At the first trial, the prosecution also called Jessica Lopez (Magdalena Lopez' daughter) who was also home on the night of the shooting and witnessed the events in the park when Moises Lopez was murdered. On the night in question, her attention was drawn to the park when she heard noises and someone screaming. (Exhibit 1 - Oct 6, 2010, RT 42.) When she looked into the park, she saw a group of people. (Exhibit 1 - Oct 6, 2010, RT 43.) There were more than three but less than ten. (Exhibit 1 - Oct 6, 2010, RT 44.) Some time later, she saw a fight start when someone hit another person (the victim Moises Lopez) who was on the floor. (Exhibit 1 - Oct 6, 2010, RT 45.) The victim was lying on his back. There were three people around him who were kicking him. (Exhibit 1 - Oct 6, 2010, RT 45.) She stopped watching and went to her room because she does not like violence. (Exhibit 1 - Oct 6, 2010, RT 46.) She called 911. (Exhibit 1 - Oct 6, 2010, RT 47.) She then returned to where her mother was and heard gunshots. When she looked into the park she saw the victim being shot, but she did not see the person who did the shooting. (Exhibit 1 - Oct 6, 2010, RT 48-49.)

At the first trial, the prosecution also presented DNA opinion testimony linking a pair of bloody gloves found in the backyard of a home that shares a property line with Mountain View Park. Shawn Montpetit testified that the blood on the outside of the gloves

was a single source match to Moises Lopez.  Based on this, it is assumed that the gloves were worn by one of the three men who attacked Moises.  Montpetit swabbed the inside of the palm area of the gloves to determine who might have worn them.  Montpetit obtained a DNA profile for each glove.  With regard to item 16-2, the swab of the inside palm area of the right glove, Montpetit opined that Petitioner was a possible minor contributor to a DNA mixture that included at least three individuals.  He testified that the probability that a person in the Hispanic population chosen at random would match the DNA profile by chance alone was 1/110.  (Exhibit 7 - Oct 18, 2010, RT 68.)  This testimony was presented to advance the theory that Petitioner was the one who wore the gloves.

At the first trial, the prosecution called witnesses to attempt to show Petitioner was the shooter.  The prosecution called Andres Lopez who identified Petitioner as the shooter.  This testimony was extremely unreliable as Andres was shown to be drunk and high on marijuana at the time of the shooting, he was extremely inconsistent on important facts, and had a motive to lie based on believing he would be released from custody.[2]

Based on all the testimony in the case, the prosecution argued that Petitioner was liable for the murder based on a direct liability theory, i.e., that he was the shooter.  The prosecution, it should be noted, could have argued and asked for jury instructions on other theories of murder assuming they believed he was one of the other two men who beat Moises Lopez, but didn't actually pull the trigger.  These include a theory of aiding and abetting, co-conspirator liability, and felony murder.  The prosecution never presented these arguments or theories at the first trial and the jury was not instructed on them.[3]

At the first trial, the defense presented a theory that he was not involved in the murder at all, either as the direct perpetrator (shooter) or as a co-participant.  His presented evidence showing that when he arrived at the park with his girl friend, Diana Banuelos, they walked up the alley and drank some beers.  This was consistent with DNA found on two

---

[2] Andres Lopez' testimony was not convincing and the undersigned counsel can provide more detail upon request.  For purposes of the arguments herein, it is not particularly relevant.

[3] In preparation for this supplemental petition, the undersigned counsel obtained the jury instructions given at Petitioner's first trial.  The undersigned counsel found no instructions related to inchoate theories of murder liability such as adding and abetting, co-conspirator liability or felony murder.  The undersigned counsel submits this representation as an officer of the court but can provide a declaration and a copy of the instructions if the court so orders.

1  beer bottles containing Petitioner's single source DNA profile found in the park by crime

2  scene investigators.  He and Diana were arguing.  They moved down the alley and continued

3  to argue near her car where the alley meets Franklin Ave.  During the argument, they heard

4  gunshots and ran away, eventually stopping at a nearby Home Depot parking lot.  Petitioner

5  called his brother Victor Dominguez who picked them up and gave them a ride home.  This

6  theory was supported and corroborated by witnesses Diana Banuelos, Victor Dominguez,

7  Siria Ford, Christian Martinez, and Julio Ramirez.

8        The defense also deeply cross examined and challenged the prosecution's DNA

9  expert Shawn Montpetit.  It also called a DNA expert named Vincent Miller who testified

10  that the conclusions of Shawn Montpetit regarding item 16-2 were not supported by

11  scientific literature.

12        On this evidence, the jury hung in favor of the defense with nine (9) votes for Not

13  Guilty and three (3) votes for Guilty.  Judge Fraser later dismissed the case citing

13  prosecution's failure to meet its burden of proof at trial.

14        At the second trial, the prosecution put on essentially the same case.  They called

15  both Magdalena Lopez and Jessica Lopez who testified to essentially the same facts as they

16  did at the first trial.  They recalled Andres Lopez to testify that Petitioner was the shooter.

17        The prosecution also presented substantially similar DNA evidence related to the

18  bloody gloves arguing again that Petitioner's DNA was on the inside of the gloves.

19  However, the DNA testimony slightly improved for the prosecution.  This time Shawn

20  Montpetit opined that Petitioner was a possible minor contributor to new swabs taken from

21  the inside of both the left and right gloves.  He testified that the probability that a person

22  selected at random would match the DNA profile obtained from the inside palm area of the

23  right glove (item 16-3) was 1/450 in the Hispanic population.  (April 5, 2011 RT 970 -

24  Previously lodged by the Attorney General.)  He testified that the probability that a person

25  selected at random would match the DNA profile obtained from the inside palm area of the

26  left glove (item 17-3) was 1/65 in the Hispanic population.[4]  (April 5, 2011 RT 977.)

27

28  [4] It should be noted that this testimony was the basis for the "Brady" violation in that it was, at the time Montpetit testified, completely inconsistent with the SDPD's Lab's interpretation guidelines.  This fact was concealed by Montpetit at the time he testified for the prosecution.

The only other additional evidence the prosecution put on at the second trial was the testimony of Glennys Berumen.  Ms. Berumen provided testimony that Josue Gutierrez, who she knew as "Scrappy" told her that he was at the park on the night of the shooting and he saw Petitioner shoot Moises.  (April 4 2011 RT 636.)  As such, her testimony was in furtherance of a direct liability theory (i.e., that Petitioner was the shooter) and not in furtherance of a co-conspirator liability theory.

It should be noted that Ms. Berumen's testimony was highly unreliable.  She claimed that she was Moises Lopez' girlfriend at the time he was murdered.  (April 4, 2011 RT 626.)  She gave conflicting accounts to law enforcement of the circumstances of Scrappy's statements including when and where Scrappy made these statements to her, who was with him, and what he told her about the killing.  For example, she testified that Scrappy told her that after the shooting, Petitioner was driven away by Siria Ford.  (April 4 2011 RT 673.)  This fact was verifiably false because Ford's car was found at the scene of the shooting and was not driven away from the scene as described by Scrappy's alleged statements.

The only discernible difference between the prosecution's presentation at the first trial versus the second trial is that they added the charge of conspiracy to commit murder and argued as an alternative theory that Petitioner may have been one of the co-participants.  At neither the first trial nor the second trial did the prosecution call any witness who identified Petitioner as one of the other non-shooter co-participants.

At the second trial, Petitioner claimed, again, that he was not involved in the beating and/or murder of Moises Lopez.  He again asserted that he was arguing with Diana Banuelos where the alley meets Franklin Ave when the shooting occurred.  He supported his claim with the same witnesses as he called in the first trial.  Further, Petitioner attacked the DNA evidence in the second trial in a substantially similar way as he did in the first trial; i.e. by showing that the conclusions of the expert were not supported by the current scientific literature on DNA mixture interpretation.

Petitioner was found guilty of both murder and conspiracy to commit murder.  He then pursued an appeal in state court on double jeopardy grounds.

In appellate briefing Petitioner does not cite <u>Ashe v. Swenson</u> (1970) 397 U.S. 436, nor does he argue collateral estoppel.  He does however consistently refer to his claim as barring retrial.  For example, in Petitioner's reply brief his appellate counsel states "Double jeopardy barred retrial in the present case." (Exhibit 15 - Reply Brief, p. 1.)  Also, in Petitioner's state petition for review at the CA Supreme Court, Petitioner frames the double jeopardy issue in the "Questions Presented for Review."  He asks, "whether a trial court's dismissal of the charges for insufficient evidence (following a hung jury) prohibits retrial where the trial court believed the prosecution could still recharge the case." (Exhibit 16 - Petition for Review, CA Supreme, p. 1.)  Petitioner asks the California Supreme Court "to use this case as an opportunity to explain that once the trial court dismisses charges for insufficient evidence (rather than as the 13th juror) double jeopardy prohibits retrial whether or not the trial judge was aware of that point at the time of the ruling." (Exhibit 16, p. 3)  He cites the applicable law as the Fifth Amendment to the United States Constitution.  (Exhibit 16, p. 6)

There are a number of instances in the briefing where Petitioner's counsel refers to the claim as prohibiting the "murder charge."  However, the totality of the brief refers to a claim barring retrial.  This point is illustrated when petitioner's appellate attorney summarizes his argument in the "Conclusion" section of his Petition for Review at the California Supreme Court.  He states, "But the primary issue the court is being asked to address and explain is whether, as the court ruled in Hatch, double jeopardy prohibits retrial where the trial court dismisses charges based on the insufficiency of the evidence…" (Exhibit 16, p. 64.)

It should be noted that the primary issue being examined by the state court of appeal was whether an acquittal occurred.  The briefing by the parties and the appellate opinion appear to assume that an acquittal would bar retrial in the case.  For example, the Court of Appeal in its unpublished opinion states, "Dominguez contends double jeopardy barred his retrial in the second case after the jury deadlocked and the court expressly dismissed without prejudice the first case." (Exhibit 17 - 4th DCA Opinion D060019, p. 2)  The dissenting opinion also assumes that acquittal would bar retrial.  "Because I conclude that

the second trial was barred under double jeopardy principles, it is unnecessary to consider Dominguez's additional claims." (Exhibit 18 - Dissenting Opinion D060019, p. 1.)

During the appellate proceedings, the parties never briefed the issues related to double jeopardy as it applies separately to the conspiracy to commit murder charge. Such oversight may be excusable when considering that, assuming an acquittal occurred, the conspiracy would have been barred under state joinder laws, irrespective of the double jeopardy analysis. (See Cal. Penal Code § 654 and Kellett v. Superior Court (1966) 63 Cal. 2d 822.)

The prosecution is now proceeding on an amended information filed on November 3, 2017. (Exhibit 19 - Amended Information) This information charges a single count of conspiracy to commit murder with ten (10) overt acts. Overt acts one (1) through (9) allege that Petitioner or "one of the two unidentified co-conspirators" is the principle in the crime (aka "the shooter"). For example, overt act number two states "On or about September 13, 2008, FLORENCIO JOSE DOMINGUEZ or one of the two unidentified co-conspirators produced a handgun." This would leave open the possibility that the prosecution could argue the theory that Petitioner is guilty of conspiracy because he was the shooter.

**EXHIBITS SUBMITTED**

Petitioner submits the following exhibits in support of the claims presented herein.

Exhibit 01 - (First Trial Transcript - October 6, 2010)

Exhibit 02 - (First Trial Transcript - October 7, 2010)

Exhibit 03 - (First Trial Transcript - October 8, 2010)

Exhibit 04 - (First Trial Transcript - October 12, 2010)

Exhibit 05 - (First Trial Transcript - October 13, 2010)

Exhibit 06 - (First Trial Transcript - October 14, 2010)

Exhibit 07 - (First Trial Transcript - October 18, 2010)

Exhibit 08 - (First Trial Transcript - October 19, 2010)

Exhibit 09 - (First Trial Transcript - October 20, 2010)

Exhibit 10 - (First Trial Transcript - October 21, 2010)

Exhibit 11 - (First Trial Transcript - October 25, 2010)

Exhibit 12 - (First Trial Transcript - October 26, 2010)

Exhibit 13 - (First Trial Transcript- November 4, 2010)

Exhibit 14 - Petitioner's AOB

Exhibit 15 - Petitioner's Reply Brief

Exhibit 16 - Petitioner's Petition for Review (CA Supreme)

Exhibit 17 - 4th DCA, Appellate Opinion

Exhibit 18 - 4th DCA, Appellate Dissent

Exhibit 19 - Amended Information

## CLAIMS UNDER 28 U.S.C. 2241(a)(3)

Petitioner now claims that he is in custody in violation of the Constitution or laws or treaties of the United States within the meaning of 28 U.S.C. 2241(a)(3). Petitioner claims that his confinement, while awaiting trial on a conspiracy to commit murder, is a violation of the Fifth Amendment of the United States Constitution privilege against being put twice in jeopardy. Petitioner prays for an order releasing him from custody and precluding any further jury trial.

## ARGUMENT

### I.   The standard of review in this petition is de novo.

When this petition was originally filed, the standard of review was set by AEDPA because the statutory authority for relief was 28 U.S.C. § 2254. After remand, and upon the election of Petitioner, the statutory authority for relief is now 28 U.S.C. § 2241. This relieves Petitioner from the stringent AEDPA standards and reverts to a simple de novo standard of review. In Stow v. Murashige, the Ninth Circuit Court of Appeals determined that Steven Donald Stow's habeas petition was properly classified as a 2241 petition (even though he had filed it as a 2254 petition) because he was not in custody because of a conviction from a state court. (Stow v. Murashige (9th Circ. 2004), 389 F.3d 880, 885.) As a result they did "not apply the heightened standards imposed by the Antiterrorism and Effective Death Penalty Act of 1996 contained in 28 U.S.C. § 2254." (Id. at 886.) They explained,

The significance of this determination is that Stow is not required to

satisfy the demanding standards of AEDPA embodied in § 2254 to obtain habeas relief. That is, we can affirm the district court's judgment by concluding de novo that subjecting Stow to a retrial on the attempted second degree murder charges would violate his Fifth Amendment right against double jeopardy. We need not further consider, as the district court did, whether the Hawaii Supreme Court's decision was "contrary to" or an "unreasonable application of" clearly established Federal law.

(Id. at 888.)

The same analysis applies here. Petitioner initially filed this petition under 28 U.S.C. § 2254 as a person convicted in state court. While this petition was pending, the state court reversed his conviction. Now the court has reclassified his petition as one arising out of 28 U.S.C. § 2241. As a result, the court need not analyze the issues presented here under the stringent standard of review in AEDPA. Instead, the court should analyze the issues de novo and apply and independent analysis of the claims presented.

**II.** **This court is not constrained by the exhaustion doctrine and has the power to grant habeas relief whether or not Petitioner exhausted his his claims in state court.**

"It has been settled since Ex parte Royall, 117 U.S. 241 (1886), that a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." (Picard v. Connor (1971) 404 U.S. 270, 275.) Unlike 28 U.S.C. § 2254 which requires exhaustion by its terms, Section 2241 has no exhaustion requirement as a prerequisite for relief. Instead decisional law has superimposed exhaustion principles to accommodate principles of federalism. (See United States ex rel. Scranton v. New York (2d Cir. 1976) 532 F.2d 292, 294.) The exhaustion "requirement" does not limit the court's power, it merely reflects a policy of federal-state comity. (See Picard, 404 U.S. at 275.)

In other words, exhaustion is not required in every case brought pursuant to Section 2241. For example, there can be legitimate reasons for not requiring exhaustion in state court. As explained in a New Jersey District Court decision, "the doctrine does not delimit the federal power of habeas corpus, 28 U.S.C. § 2241." (United States ex rel. Ordog v. Yeager (D.N.J. 1969) 299 F.Supp. 321, 330.) "Deference to the state court's post-conviction

relief procedure might well result in further delay. Far too much unavoidable delay has been occasioned." (Id.)  "Consideration of comity aside, where the error is of such federal constitutional dimension as the denial of a fair trial, a federal court having concurrent habeas corpus jurisdiction is obliged to act…" (Id. at 331.)

The court is not hamstrung by the statutory requirement of exhaustion in 28 U.S.C. § 2254.  Since this petition is brought under Section 2241, nothing limits the court jurisdiction to excuse the exhaustion requirement.

In the instant case, requiring further exhaustion from Petitioner would cause undue delay and would be futile.  Petitioner has already presented his claims in direct appeal and the California Court of Appeals has ruled that no acquittal occurred.  Thus, his claim would be subject to the law of the case doctrine and the state court would almost certainly not consider any future double jeopardy claims for conspiracy or any other charges.  (See People v. Shuey (1975) 13 Cal. 3d 835, 841.)

### III.   In any event, Petitioner adequately exhausted his claims in state court.

As a general rule, a petitioner satisfies the exhaustion requirement if he presents the federal claim to the appropriate state courts in the manner required by state law, thereby "afford[ing] the state courts meaningful opportunity to consider [the] allegations of legal error." (Vasquez v. Hillary (1986) 474 U.S. 254, 257.)  Petitioner must raise the claim at all stages of the states appellate review process.  (McCary v. Zavaras (10th Circ. 2010) 398 Fed. Appx. 399, 402.)  However, Petitioner need not also seek collateral review. (See Ward v. Wolff (1980), 499 F. Supp. 1129, 1130.)

"[O]once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." (Picard, 404 U.S. at 275.)  Fairley presented means that the same claim Petitioner brings in federal court has been presented in state court.  "Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." (Id. at 275-276.)

The legal issue before the court is whether Petitioner pleaded his double jeopardy

claim related to the conspiracy to commit murder charge with sufficient clarity to give the state court a fair opportunity to make a ruling.  "...[T]o satisfy the 'fairly presented' requirement, a petitioner is required to refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue."  (Barrett v. Acevedo (8th Circ. 1999) 169 F.3d 1155.)

In Snell v. Lockhart, the Eighth Circuit found that a claim had been "fairly presented" because petitioner specifically referred to due process clause in the appellate brief, albiet in "passing reference."  (Snell v. Lockhart (8th Circ. 1994) 14 F.3d 1289, 1298-99.)

In the instant case, Petitioner raised the specific constitutional principle of double jeopardy in both his direct appeal and in a petition for review at the California Supreme Court.  Petitioner, admittedly, did not cite Ashe v. Swenson (a case he now relies on in this supplemental petition) and did not specifically refer to the conspiracy to commit murder charge.  He did, however, continuously and unequivocally argue that the "retrial" was barred by double jeopardy.  And he did cite the 5th Amendment to the United States Constitution as well as the Double Jeopardy Clause contained within that Amendment.

Ashe v. Swenson is a Fifth Amendment Claim.  "The ultimate question to be determined, then, in the light of Benton v. Maryland, supra, is whether this established rule of federal law is embodied in the Fifth Amendment guarantee against double jeopardy. We do not hesitate to hold that it is. For whatever else that constitutional guarantee may embrace, (citation), it surely protects a man who has been acquitted from having to 'run the gantlet' a second time."  (Ashe v. Swenson (1970) 397 U.S. 436, 445-446.)

There is no requirement that Petitioner cite all of the case law that supports his claim, or even any case law that supports his claim, to exhaust the claim in state court. Petitioner need only cite the constitutional principle, in this case double jeopardy.  And he did that when he stated that retrial was barred by double jeopardy.  Thus, the claim related to conspiracy to commit murder is exhausted.

IV.   **The conspiracy charge is barred by double jeopardy.**

In Ashe, supra, 397 U.S. at 446, the United States Supreme Court held that the

federal procedural rule of collateral estoppel is embodied in the protections of the Fifth Amendment Double Jeopardy Clause.  In the early hours of January 10, 1960, six men were robbed while playing poker.  (Id. at 437.)  Ashe, suspected as participating in the robbery, was brought to trial on a single count of robbery related to only one of the victims.  (Id. at 438.)  Ashe was acquitted after the jury cited insufficiency of the evidence.  (Id. at 439.) Ashe was retried six (6) weeks later and charged with a single count of Robbery related to one of the other victims.  (Id.)  This time he was convicted.  (Id. at 440.)  The Supreme Court of the United States granted review to determine whether double jeopardy barred his second robbery trial.  (Id. at 441.)

The court found that with regard to Ashe's first robbery trial, "the single rationally conceivable issue in dispute before the jury was whether the petitioner had been one of the robbers."  (Id. at 445.)  Since the jury had found that he was not, retrial was impermissible." Id.)  The court reasoned that "once the jury determined by its verdict that the petitioner was not one of the robbers, the State could not constitutionally hail him before a new jury to litigate that issue again."  (Id. at 446.)

This case is directly applicable here.  Ashe could not be retried related to the robbery because his identity as being involved was not established beyond a reasonable doubt. Likewise, had the prosecution charged him with conspiracy to commit robbery, that charge also would have been precluded by double jeopardy.

In the instant case, the prosecution failed to establish Petitioner's involvement in the crime at the first trial and he was acquitted.  The prosecution certainly could not now recharge Petitioner with murder on a theory that he was a one of the co-participants and guilty of murder under an aiding and abetting theory or co-conspirator liability theory.

In Yeager v. United States (2009) 557 U.S. 110, the United States Supreme Court applied the double jeopardy/collateral estoppel principle to a case involving securities fraud. F. Scott Yeager was brought to trial on dozens of counts related to both fraud and insider trading.  (Id. at 114.)   After a thirteen week trial, Yeager was acquitted on the fraud counts, but failed to reach a verdict on the insider trading counts.  (Id. at 115.)  The government sought to retry him on the insider trading counts.  (Id.)  Yeager moved to dismiss the insider

trading counts, arguing that his acquittal as to the fraud counts precluded retrial on the insider trading counts.  Yeager argued that retrial was precluded because the acquittal of the fraud counts necessarily decided that he did not "possess material, nonpublic information" related to the company Enron.  Because retrial would require the Government prove that critical fact, the issue-preclusion component of the Double Jeopardy Clause barred a second trial.  (Id.)

After denial of his motion and several appeals, Yeager brought the case the Supreme Court.  In finding that double jeopardy did bar retrial of Yeager on the insider trading counts the court reasoned "courts should 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' "  (Id. at 120, quoting Ashe, supra, at 444.) The inquiry, it explained, "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings."  (Id.)

Applying these principles to this case, Judge Fraser's acquittal of Petitioner on the murder charge, foreclosed the issue of his involvement in the offense as either the shooter or one of the other two men.  This is borne out by a basic analysis of liability for murder.

Under the facts of this case, it is logically inconsistent for Petitioner to be guilty of conspiracy to commit murder and be not guilty of murder.  This murder was perpetrated by three of the men, all of whom are guilty of murder.  The shooter is directly liable under an actual malice theory.  The other two are guilty of murder under several other inchoate theories of liability.  These include aiding and abetting liability, co-conspirator liability, and (potentially) felony murder liability.Thus, if Petitioner is any one of these individuals, he is guilty of murder.  Yet after the prosecution was given an opportunity to prove that he was one of these individuals, Petitioner was acquitted.

Petitioner concedes that the prosecution's sole theory at the first trial was that Petitioner was the shooter.  But this only bolsters his point.  No witnesses identified Petitioner as one of the non-shooter co-participants.  The judge dismissed/acquitted knowing that three individuals perpetrated the crime and Petitioner's identity had not been established

beyond a reasonable doubt.  Had the judge believed that sufficient evidence was presented to identify Petitioner as one of the co-participants, the case would not have been dismissed for lack of identity.  Had the prosecutor believed it presented sufficient evidence to show Petitioner was one of the co-participants, it would have argued inchoate theories of liability for murder.

Consider the illogical precedent that will be set if the court holds a conspiracy trial can go forward in this case.  Where a crime is perpetrated by multiple individuals, let's say ten (10), and the prosecution believes the defendant is involved, but cannot say which one he is, the prosecution would be able to bring the defendant to trial ten times.  Each time it brings him to trial it would theorize that he is a new perpetrator, until all participants are exhausted.

In this case, could the prosecution bring Petitioner to trial on a theory that he is co-participant number 1, lose the case, and then proceed again on a theory that he is co-participant number 2?  That is essentially what the prosecution is doing here.  The Prosecution brought Petitioner to trial theorizing he was the direct perpetrator and lost because they could not sufficiently identify him.  Now they are bringing him to trial on a theory that he is a co-participant, with no new evidence to support that theory.

The case of United States v. Felix (1992) 503 U.S. 378 is distinguishable.  In 1987, Frank Felix was manufacturing methamphetamine in Oklahoma.  At the same time he was prosecuted in federal court in Missouri and found guilty of attempt to manufacture methamphetamine based on him having illegal chemicals sent to him in Joplin, Missouri. (Id. at 380.)

In 1989, Felix was charged with drug conspiracy in federal court in Oklahoma related to his manufacturing of methamphetamine.  Some of the overt acts charged in the Oklahoma conspiracy were acts in which he was convicted of in Missouri.  (Id. at 382.)

The court held that "prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause." (Id. at 380-381.)  The court reasoned that "a mere overlap in proof between two prosecutions

does not establish a double jeopardy violation." (Id. at 386.)

Petitioner's case is not merely an overlap in proof.  All of the the overt acts charged in the current Amended Information are related to the single incident at issue in this case. Except for overt act #10 (which asserts Petitioner ran away after the killing), if any of the overt acts in the information were proven, Petitioner would be guilty of murder, the very charge with which he was acquitted.

Even more telling is that the overt acts, as charged in the current information, contemplate that Petitioner could be the direct perpetrator, i.e., the shooter.  His identity as the shooter was unquestionably resolved when he was acquitted.  This means that even though he was acquitted of murder because the prosecution failed to prove his identity as the shooter, the jury in his upcoming case is going to be asked to again decide whether Petitioner was the shooter.

Also, in Felix, the second prosecution was regarding a conspiracy that covered a long course of conduct.  The overt acts for which Felix had been convicted in a prior prosecution were only a small part of the later charged course of conduct that gave rise to the conspiracy. The current prosecution of Petitioner is not based on a continuing course of conduct.  It is a single incident, the same single incident that was presented in court resulting in an acquittal. The current prosecution is based on the same essential facts, testimony, and evidence as the prior prosecution.  There is no new event giving rise to the charged crime and Petitioner was acquitted based on lack of identity.  In other words, the conspiracy with which Petitioner is now being charged is not a related crime with some crossover evidence as was the case in Felix.  Insead it is essentially the same crime, a beatdown and murder perpetrated by three individuals.  The upcoming trial is expected to have virtually the same evidence as the prior two trials.  Felix does not control in this case.

Likewise, Evanchyk v. Stewart (9th Circ. 2003) 340 F.ed. 933 is also distinguishable from Petitioner's case.  Michael Evanchyk was tried in Arizona, along with other defendants, for multiple crimes that resulted in a death.  He was acquitted of first degree murder, but convicted of second degree murder and conspiracy to commit first degree murder.  Under Arizona law a conviction for first degree murder can be based on either an intentional killing

1   or felony murder, which does not require intentional killing.  (Id. at 935.)

2          On habeas, the federal district court granted Evanchik relief from his conspiracy to

3   commit murder conviction on a theory that, based on erroneous jury instructions given, he

4   may have been convicted on a theory of conspiracy to commit felony murder, which is not a

5   crime in Arizona.  (Id. at 938.)  The district court ruled that Arizona could retry him on the

6   conspiracy to commit murder charge.  Evanchyk cross appealed that such retrial would

7   violate double jeopardy since he had been acquitted of first degree murder.

8          The basis of Evanchyk's double jeopardy claim was that because he was acquitted of

9   first degree murder, he cannot now be found to have premeditated.  The Ninth Circuit

10  disagreed and ruled that because conspiracy to commit murder and first degree murder, as

11  defined under Arizona law, have different elements, Evanchyk could be retried for

12  conspiracy to commit murder.  (Id. at 942.)

13         The Evanchyk decision has no bearing on the analysis in Petitioner's case.  The issue

14  at trial was not whether Evanchyk (or the other two identified co-participants) were involved

15  in the crimes, but rather whether he harbored the required mental state.  Evanchyk's identity

16  as one of the perpetrators was well established.  The verdict of not guilty of the first degree

17  murder count did not resolve the issue of his involvement.  It may have resolved the issue of

18  premeditation, but premeditation is not required in conspiracy to commit murder under

    Arizona law.

19         Compare this to Petitioner's case.  His involvement in the crime was resolved when

20  he was acquitted of murder.  The court found specifically that Petitioner was not the shooter.

21  The court tacitly found that he was not involved at all when it stated that the prosecution

22  failed to meet its burden of proof knowing full well that this murder was perpetrated by

23  three individuals.  The mental state of the assailants was never even reasonably at issue.

24         In Evanchyk, given the factual framework of the case, it was logically consistent for

25  Evanchyk to be guilty of conspiracy to commit murder and not guilty of first degree murder.

26  His involvement in the crime had been established at the first trial.  The only issue was

27  whether he harbored a certain mental state.  Under the laws of Arizona, he could have been

28  guilty of one and not the other and vice versa.

As discussed earlier, this logical consistency is not the case with Petitioner. Petitioner is guilty of murder if he is any one of the co-participants, either as an aider and abettor or based on co-conspirator liability.  (See Calcrim 417.)  Thus, under the facts of this case, it is not possible for Petitioner to be guilty of conspiracy to commit murder and be not guilty of murder.  And yet, he has been acquitted of murder.

Finally, the policies behind double jeopardy protections are in full display in this case.  "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty."  (Green v. United States (1957) 355 U.S. 184, 187-188)

If the Petitioner stands trial, it will be his third time doing so on this case.  He was acquitted after the first trial.  He was convicted after the second trial, but only after the San Diego Police Crime Lab withheld exculpatory evidence that would have eviscerated all of the inculpatory DNA evidence related to the gloves.  Each successive attempt to prosecute him increases the probability that he may be convicted even though he may be an innocent man.

Even more fundamental is that the prosecution plays games by losing on a murder case and than recharging as a conspiracy to commit murder under the same case facts, especially where a conspiracy charge could have been charged in the first trial and the defendant was acquitted on the issue of identity.  Could the prosecution hereafter charge conspiracy arguing that Mr. Dominguez was non-shooter number one, then lose its case and recharge conspiracy arguing that Mr. Dominguez was non-shooter number two?  There is a compelling interest in preventing dangerous prosecutorial abuse illustrated in this case. States will be free to treat the first trial as a practice run only to recharge a factually indistinguishable case slightly differently in order to secure a conviction.  Prosecutors will be encouraged to try their cases piecemeal instead of bringing all cognizable charges in one action.  Such a precedent cannot be tolerated.

**V.** **Irrespective of the court's decision on the now pending conspiracy to commit murder charge, the court should independently rule on whether the murder charge is barred by double jeopardy because the district attorney could refile it at any time.**

The fact remains that the DA to could amend the information and charge Petitioner with first degree murder at any time.  It is clear from the circumstances of this case that the prosecution dismissed the murder strategically in an attempt to avoid the inevitable ruling that Judge Fraser acquitted defendant of murder after the first trial.  Such a ruling would result in precluding the current conspiracy charge on independent state grounds.  (See Cal. Penal Code § 654; see also Kellett v. Superior Court (1966) 63 Cal.2d 822.)

If the court does not resolve the issue of whether the murder charge is precluded from retrial under double jeopardy principles, what is stopping the prosecution from refiling that charge when this federal petition is resolved?  The only way to ensure Petitioner obtains the full benefit of his acquittal under the law, is for the court to resolve that issue once and for all and rule that Petitioner may not be retried on the murder charge because he was acquitted thereof when Hon. Judge Jeffrey Fraser dismissed the case based on the prosecution's failure to meet its burden of proof.

## CONCLUSION

For the reasons stated herein, Petitioner respectfully requests the court grant the relief requested.

Respectfully submitted,

DATED: February 24, 2019

/s/ *Matthew J. Speredelozzi*

_____

MATTHEW J. SPEREDELOZZI
Attorney for
Florencio Jose Dominguez